IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| KAREN DANA HENDRIX ) | Case No. 05-47089 |
| Debtor. ) | |
| _____ ) | |
| DANA R. TOWLE, M.D., P.C. ) | |
| ) | |
| and ) | |
| ) | |
| DANA R. TOWLE, M.D., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Adversary No. 06-04103 |
| v. ) | |
| ) | |
| KAREN DANA HENDRIX, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

Before the Court for determination in this adversary proceeding is a motion for partial summary judgment on certain of the claims asserted in the complaint filed by plaintiffs Dana R. Towle, M.D., P.C. and Dana R. Towle, M.D. (collectively "Plaintiffs") for denial of discharge to debtor Karen Dana Hendrix ("Debtor"), pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), (a)(5) and (a)(6). This Court has jurisdiction over the complaint under 28 U.S.C. § 1334(b) and § 157(a) and (b). This is a core proceeding which this Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(J). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Plaintiffs have satisfied their burden of demonstrating that there is no genuine issue of material fact as to their claim that Debtor has made false oaths and should be

denied a discharge pursuant to § 727(a)(4)(A).[1]

## I. UNCONTROVERTED FACTS AND PROCEDURAL BACKGROUND

Debtor was Plaintiffs' office manager for approximately 5 years between 1998 and 2004.[2] After Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on September 26, 2005, Plaintiffs filed a complaint objecting to discharge based on assertions of numerous statutory violations. One such alleged violation is that Debtor made numerous false oaths by failing to disclose material information in her bankruptcy documents. Although Debtor signed the Schedule of Assets and Liabilities and the Statement of Financial Affairs filed with her petition, swearing that the information contained therein was true and correct to the best of her knowledge, she later admitted they did not accurately reflect her true assets. Debtor's Schedule B indicates that her household goods have a total fair market value of $1,760.00.[3] Interestingly, however, she made $4,195.60 in purchases from Benchmark in February 2005 and $3,223.26 in purchases from Nebraska Furniture Mart in May 2005.[4] Contrary to the information contained in her Statement of Financial Affairs, Debtor left some of her household furnishings with Rich Gray, a person with whom she previously co-habited, and she received payment from Mr. Gray for said furniture post-petition.[5] Debtor denied any interest in a business or that any liquidated claims were owed to her,

---

[1] Because the Court finds, as noted below, that Plaintiffs have established, by a preponderance of the evidence, the grounds necessary for denial of discharge under § 727(a)(4)(A), the Court will not rule on Plaintiffs' other claims under §§ 727(a)(2), (a)(3), (a)(5) or (a)(6).

[2] Defendant's Response to Motion for Summary Judgment and Suggestions in Opposition ("Debtor's Response to Summary Judgment"), ¶ 3.

[3] Schedule B, ¶ 4.

[4] Debtor's Response to Summary Judgment, ¶'s 15 and 17.

[5] Debtor's Response to Summary Judgment, ¶'s 49 and 50.

2

however, Debtor presented Plaintiffs an invoice, in the name of "H, K &A", dated October 12, 2004, for work performed between July and August 2004.[6] She also received some income from her work with Dan Dana/Mediation Training Institute, Inc., although neither this income or her affiliation with Dan Dana were disclosed in her bankruptcy documents.[7] In her Schedule B, she denied any interest in office equipment, furnishings and supplies.[8] However, at her Rule 2004 exam, Debtor admitted that she possesses a computer, printers, a computer monitor, a laptop and fax machine.[9] She also made purchases from various electronic and office supply stores between July 2001 and February 2005 in excess of $30,000.[10]

Debtor scheduled Citifinancial as an unsecured creditor, but admitted that she pledged a Sony 36D computer with a fair market value of $5,000 and a Sony laptop with a fair market value of $2,500 as security for a loan on June 8, 2004.[11] She obtained a second loan from Citifinancial on December 29, 2004 after pledging a Sony 25" TV with a fair market value of $600, and a Sony

---

[6] Debtor's Response to Summary Judgment, ¶ 27. "H,K&A" is one of the business entities that Plaintiffs allege Debtor had an interest in and failed to disclose. The issue of whether Debtor had an interest in one or more businesses remains in dispute, however, the Court is convinced that Debtor had at least one business affiliation from which she received income and did not disclose in her schedules.

[7] Debtor's Response to Summary Judgment, ¶'s 34, 40. The issue of whether Debtor was an independent contractor for Dan Dana/Mediation Training Institute, Inc. or whether she had an interest in the business remains in dispute.

[8] Schedule B, ¶'s 26 and 27. The Court notes that Debtor lists a desk and a chair in her Schedule B.

[9] Debtor's Rule 2004 Exam, p. 17 line 3 - p. 19 line 12, p. 44 line 10 - 20.

[10] Debtor's Response to Summary Judgment, ¶'s 19, 24-26. The portion of Debtor's purchases to be attributed to her personal use, versus for her employer, remains a controverted fact. The Debtor admitted, however, that some of the purchases were for personal use and that she decided not to schedule certain of these purchases because she did not believe they had value.

[11] Debtor's Response to Summary Judgment, ¶'s 9 and 18.

3

laptop computer, with a fair market value of $5,000.[12]

On April 5, 2006, Plaintiffs filed a Complaint to Determine Dischargeability of Debt or in the Alternative to Deny Discharge in which Plaintiffs sought an order determining that certain claims against Debtor are nondischargeable and denying Debtor a discharge. Debtor's only amendment to her schedules was to Schedule F. One of Plaintiffs' allegations in the Complaint is that Debtor made a false oath by having failed to disclose certain business affiliations of Debtor, failing to disclose income from a business affiliation, failing to schedule numerous items of personal property and office equipment and failing to disclose that she collected on a claim post-petition. Plaintiffs allege that Debtor should therefore be denied a discharge pursuant to § 727(a)(4)(A).

## II. DISCUSSION AND LEGAL ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir.1997); *In re Marlar*, 252 B.R. 743, 750 (B.A.P. 8th Cir.2000). The party moving for summary judgment has the initial burden of proving that there is no genuine issue at to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Nelson v. Kingsley (In re Kingsley)*, 208 B.R. 918, 920 (B.A.P. 8th Cir.1997). Once a moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Celotex*, 477 U.S. at 324.

---

[12] Debtor's Response to Summary Judgment, ¶ 16.

Courts have generally been reluctant to grant summary judgment on causes of action under § 727(a)(4) because the element of fraudulent intent usually involves questions of fact regarding the debtor's state of mind. *First Nat'l Bank v. Davison, (In re Davison)*, 296 B.R. 841, 847 (Bankr.D.Kan.2003); *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 159 (Bankr. N. D. Ohio 1998). However, "there is no per se rule that state of mind issues are inappropriate for disposition on summary judgment." *Sowers*, 229 B.R. at 151; *see also e.g. In re Chavin*, 150 F.3d 726 (7th Cir.1998) (granting summary judgment under § 727(a)(4) where debtor failed to reveal valuable stock options and a partnership interest); *Meeds v. Trammell (In re Trammell)*, 197 B.R. 309 (Bankr.W.D.Ark.1996) (granting summary judgment under § 727(a)(2) on the basis of debtor's prepetition transfer of two vehicles and concealment of wages); *Najjar v. Kablaoui (In re Kablaoui)*, 196 B.R. 705, 708 (Bankr.S.D.N.Y.1996) (determining summary judgment was appropriate under § 727(a)(2) where the debtor failed to offer sufficient rebuttal evidence). If the movant produces sufficient evidence to support its asserted inference, and the respondent fails to produce significantly probative evidence to counter the inference, disposition by summary judgment may be appropriate even though subjective factors such as motive or intent are the fact issues in question. *Mathern v. United Mortgage Corp.*, 137 B.R. 311, 322 (Bankr. D. Minn.1992); *see also e.g. First Nat'l Bank of Arizona v. Cities Serv. Co., Inc*. 391 U.S. 253, 279 (1968); *Barnes v. Arden Mayfair, Inc*, 759 F.2d 676, 681 (9th Cir.1985); *American Motors Inc. v. George's Comet Motorcars, Ltd., dba George Isuzu (In re George's Comet Motorcars, Ltd., dba George Isuzu*, 100 B.R. 403, 405-406 (Bankr.N.D.Ill.1989).

### B. General Principles and Burden of Proof

Obtaining a discharge is the key component of the "fresh start" a bankruptcy proceeding is designed to give a debtor. Accordingly, denying a discharge to a debtor is considered to be a "harsh

5

and drastic penalty." *American Bank of Spickard-Trenton v. Ireland (In re Ireland)*, 49 B.R. 269, 271 n. 1 (Bankr. W.D. Mo.1985).  For that reason, the grounds for denial of discharge listed in § 727 are strictly construed in the favor of the debtor.  *Floret, L.L.C. v. Sendecky (In re Sendecky)*, 283 B.R. 760, 763 (B.A.P. 8th Cir.2002); *Gray v. Gray (In re Gray)*, 295 B.R. 338, 343 (Bankr. W.D.Mo.2003); *Rouse v. Stanke (In re Stanke)*, 234 B.R. 449, 456 (Bankr. W.D.Mo.1999).  A trustee or creditor requesting that the court deny a debtor a discharge bears the burden of proving each of the elements of the applicable claim by a preponderance of the evidence.  *Sendecky*, 283 B.R. at 763; *Gray*, 295 B.R. at 343; *Kirchner, II v. Kirchner (In re Kirchner, II)*, 206 B.R. 965, 973 (Bankr. W.D.Mo.1997).

### C.  Making of a False Oath or Account

A debtor may be denied a discharge, pursuant to §727(a)(4)(A), if the debtor knowingly and fraudulently, in or in connection with a case, made a false oath or account. The Debtor's signature on the Petition, the Schedules of Assets and Liabilities and Statement of Financial Affairs, verified and made under penalty of perjury pursuant to Rule 1008, are declarations which have the force and effect of oaths of the kind encompassed by the discharge exception for making a false oath.  *In re Bren*, 303 B.R. 610, 613 (B.A.P. 8th Cir.2004), *rev'd on other grounds, In re Bren*, 331 B.R. 797 (B.A.P. 8th Cir.2005).  The proper functioning of the entire bankruptcy process is dependent upon the debtors providing complete, accurate and reliable information in the petition and other documents submitted with the filing of the case, so that parties in interest may evaluate the debtor's assets and liabilities and appropriately administer the case.  *Bren*, 303 B.R. at 613.   A debtor's omission of assets from his bankruptcy schedules or statement of financial affairs may constitute a false oath under §727(a)(4)(A).  *Davison,* 296 B.R. at 847.

In order to deny a discharge to a debtor under this subparagraph, the plaintiff must establish

6

that: (1) debtor knowingly and fraudulently; (2) in or in connection with the case; (3) made a false oath or account; (4) regarding a material matter. *Korte v. United States of America Internal Revenue Serv. (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir.2001). Since an admission or other direct evidence of fraudulent intent is rarely available, actual intent may be established by circumstantial evidence. *Gray*, 295 B.R. at 343; *Weese v. Lambert (In re Lambert)*, 280 B.R. 463, 468 (Bankr. W.D.Mo.2002). A series or pattern of errors or omissions may have the effect of giving rise to an inference of intent to deceive. *Bren*, 303 B.R. at 614; *Gray*, 295 B.R. at 344. An omission or false statement is considered material if it relates to the debtor's business transactions or estate or concerns the discovery of assets or the existence or disposition of property. *Palatine Nat'l Bank of Palatine, Ill. v. Olson (In re Olson)*, 916 F.2d 481, 484 (8th Cir.1990); *Korte*, 262 B.R. at 474; *Gray*, 295 B.R. at 345. The threshold of materiality is fairly low. *Cepelak, Jr. et al v. Sears (In re Sears)*, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000). Section 727(a)(4)(A) provides a harsh penalty for a debtor who intentionally secrets information from the court, the trustee and creditors. "The petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts. *Sears*, 246 B.R. at 347 *citing Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir.1992).

Plaintiffs maintain that Debtor intentionally made numerous, material representations that constitute a false oath or account by failing to disclose: (1) a dining room set which she purchased from Benchmark in 2004; (2) a family room set which she purchased from Benchmark in 2005; (3) furniture from Nebraska Furniture Mart which was purchased in June 2005 for $3,223.26; (4) numerous items of business equipment; (5) interest in one or more businesses; (6) an account receivable owed by Rich Gray; (7) interest in certain real property; and (8) accurate information regarding income earned by Debtor during the years prior to the filing of the petition.

Debtor admits having failed to schedule a family room set which she had purchased, offering the explanation that she intended to return it to the creditor. Even if she had that intent, it would not have been a justification for failing to list the property. If the creditor lacked a perfected security interest in the property, it would not have been entitled to its return. Even if it had such an interest, the trustee would have been entitled to evaluate whether it was properly perfected and, if so, whether there was value in the property in excess of the lien and any available exemptions which might have been realized for the benefit of the estate. Moreover, as Plaintiffs point out, there is no evidence that the property was in fact returned. As to the dining room set which Plaintiffs claim is not listed, Debtor claims this is on Schedule B, described as a table and chairs. Plaintiffs quibble with that claim, however, the Court is not convinced that Plaintiffs demonstrated Debtor failed to schedule this property. Debtor also admits having failed to list property purchased in June 2005 from Nebraska Furniture Mart, alleging once against that she intended to return it to the creditor. Once again, this explanation is inadequate and unsupported by evidence that the property was in fact returned.

It also appears that Debtor owned several items of business equipment which she failed to list. She appears to concede having failed to list two computers and a printer alleging that they were not functional and had no value. However, as Plaintiffs point out, it is not for the Debtor to determine whether property has value and should be administered, but to disclose the property owned by her or in her possession, and let the creditors and the trustee determine its value and whether it is worthy of being administered. In the summary judgment motion, Plaintiffs list a fax machine and file drawer as being owned and not listed. The Court did not see a response from Debtor on these issues. It is possible, however, that the printer (mentioned above) and fax are a combined unit.     Debtor also appears to have failed to schedule her interest in one or more

8

separate businesses which she was affiliated with prior to the bankruptcy filing. There is a dispute between Plaintiffs and Debtor about how many different businesses Debtor was affiliated with. Plaintiffs claim the evidence indicates that there may have been three such businesses: Hendrix, Klee & Associates, a business at 7420 N. Smalley and an additional business enterprise in which Debtor provided services to Dan Dana/Mediation Training Institute, Inc. as an independent contractor. Debtor contends that Hendrix, Klee & Associates was never officially formed, had no tax identification number, no employees, no income and no clients.[13] She also asserts that the business run out of the 7420 N. Smalley was the same business she was attempting to set up and through which she provided services to Dan Dana on an independent contractor basis.[14] Even if the Court were to give Debtor the benefit of the doubt, it is quite clear that she did not list her interest in the one business from which she did earn substantial income during the period prior to the filing of the petition.[15]

Debtor also admits that she failed to list money owed her from Mr. Gray for the sale to him of some of her furniture and that she actually collected on that receivable subsequent to the filing of the petition. She argues that the reason she omitted this information is that she had "moved on" from her romantic relationship with Mr. Gray and that she "simply did not think about the furniture in Mr. Gray's possession because [her] counsel uses a room-by-room inventory of assets in

---

[13] Debtor's Response to Summary Judgment, ¶ 12.

[14] Debtor's Response to Summary Judgment, ¶ 39.

[15] It is not clear that Debtor was obligated to list the $10,000 (or $10,250) she earned as an independent contractor performing services for Dan Dana because that income may have been earned outside the time frame subject to the questions contained in the Statement of Financial Affairs. Debtor asserts that she earned the income from her services as an independent contractor in 2002 and 2003, however it is unclear whether any of that income was earned after September 21, 2003, which would have needed to be disclosed in her schedules. Debtor's Rule 2004 Examination, p.20 - 21.

9

Case 06-04103-drd   Doc 24   Filed 10/13/06   Entered 10/13/06 15:07:11   Desc Main
Document   Page 10 of 12

preparing Debtor's schedules."[16] The Court finds Debtor's explanation regarding her frame of mind and her memory loss regarding these assets inadequate. Even if the Court were to regard Debtor's explanation about her furniture in Mr. Gray's possession as tending to negate an inference of intent to deceive or conceal, it fails to address either why she failed to schedule the amount due her prepetition from Mr. Gray for the sale of certain furniture or why she failed to amend her schedules to disclose that claim even after she received payment on it from Mr. Gray subsequent to the filing of the petition.

Although Plaintiffs contend that Debtor failed to list an interest in real property, the Court finds that Plaintiffs did not demonstrate that Debtor in fact had an interest in any real property. Debtor's testimony is that she simply made payments to Mr. Gray in consideration for living in the property which he may have applied to the mortgage or other expenses.[17]

In addition to determining that the statements made in the schedules and statement of financial affairs were false, the Court must also find that the statements or omissions were material and made knowingly and fraudulently. These omissions are clearly material, relating as they do, to income of the Debtor and also to the discovery of assets which might be used to satisfy the claims of creditors. As observed above, for these purposes the bar of materiality is set rather low.

As stated above, because a debtor is unlikely to testify that he knowingly and fraudulently made a false statement or oath, a court may make a finding of actual intent based on circumstantial evidence or on inferences drawn from a course of conduct. *Gray*, 295 B.R. at 343-44. In addition to circumstantial evidence, "statements made with reckless indifference to the truth" may be regarded as intentionally false. *Id.* Here, the evidence of false oath, which Plaintiffs assert in

---

[16] Debtor's Response to Summary Judgment, p. 15.

[17] Debtor's Rule 2004 Examination, p.8.

support of an inference of fraudulent intent by Debtor, may be circumstantial, but it is also substantial. The significant amount of information which Debtor failed to disclose in her schedules and statement of financial affairs warrants the Court drawing an inference that she acted either recklessly or intentionally, either conclusion warranting a finding of fraudulent intent and a denial of discharge. In the case of each item discussed above, Debtor admitted failing to disclose property on her schedules. In several instances, Debtor offered no explanation for the omission. In several other instances, Debtor offered explanations which were unsupported by evidence, unreasonable or insufficient as a matter of law. Indeed incredibly, Debtor concedes in her responsive brief that she was "not made to fully understand the necessity of full disclosure." It is unclear to the Court whether Debtor means that she was not advised by her counsel of the need to fully disclose her assets and liabilities or whether she was so advised but for some reason failed to "fully understand." If the former, the Court would regard the assertion as irrelevant given that Debtor has an independent obligation to fully review the schedules and statements, which themselves advise of the need for complete disclosure by requiring that a debtor sign a declaration that they are true and correct under penalty of perjury. If the latter, she fails to provide any explanation or evidence as to why she was incapable of such full understanding.

Debtor complains that she was "under pressure" and under medication for depression. Apparently, Debtor would have the Court believe that her mental or emotional problems were such that she was not capable of forming the requisite intent for denial of discharge. However, beyond these bald assertions, there is no evidence that Debtor acted under duress or that her medical problems were such that she was unable to appreciate what she was doing. There is no expert medical testimony or medical records indicating that Debtor lacked capacity to understand the questions asked of her in the schedules or the need for full disclosure. Even if the Court were to take

11

Debtor's statements that she is under pressure and depressed as true, these facts alone do not excuse Debtor from reviewing her schedules to insure that they are complete and accurate. *See Gray*, 295 B.R. at 344 (debtor's involvement in a stressful and acrimonious divorce did not excuse her failure to review schedules to insure their accuracy and honesty). Moreover, Debtor is not completely unsophisticated as she has served in the capacity of business manager for Plaintiffs' business for several years and has a Master's Degree in Business Administration.[18] As Plaintiffs argue, all of these things support the Court's finding that Debtor's omissions were not inadvertent.

### III. CONCLUSION

In summary, the Court finds that Debtor omitted numerous material matters from her Schedules of Assets and Liabilities and her Statement of Financial Affairs. Given the numerous omissions, coupled with Debtor's inadequate explanations therefor, the Court finds that Debtor has failed to demonstrate that there is a genuine issue of material fact as to her intent such as to negate an inference that they were made knowingly and fraudulently. Accordingly, Debtor is not entitled to a discharge pursuant to § 727(a)(4)(A). For all the reasons stated above, Debtor will be denied a discharge. A separate order will be entered in accordance with Bankruptcy Rule 9021.

DATED:     October 13, 2006                    /s/ Dennis R. Dow
                                               HONORABLE DENNIS R. DOW
                                               UNITED STATES BANKRUPTCY JUDGE

Copies to:
Thomas D. Munro
David R. Barlow

---

[18] Debtor's Response to Summary Judgment, ¶ 2.